UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL BLANDFORD III,

                                        Plaintiff,                  DECISION AND ORDER

-vs-

                                                                   6:19-CV-6581 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

INTRODUCTION

Plaintiff Michael Blandford, III ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Mem., Feb. 3, 2020, ECF No. 10; Def.'s Mot., Apr. 3, 2020, ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is denied, the Commissioner's motion (ECF No. 12) is granted, and the Clerk of Court is directed to issue a judgment for the Commissioner and close this action.

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court. Plaintiff protectively filed his SSI application on March 1, 2016. Transcript ("Tr."), 95, Nov. 6, 2019, ECF No. 7. On July 11, 2016, the Commissioner determined that Plaintiff was not disabled, and that he

did not qualify for SSI benefits. Tr. 96. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 102.

Plaintiff's request was approved, and a hearing was held on June 5, 2018. Tr. 31. Prior to the hearing, Plaintiff's attorney, Matthew C. Gagliardo, submitted a five-page "Respondent Brief" summarizing Plaintiff's claim:

> The claimant filed a claim for disability . . . due to the severe impairments of bipolar disorder, attention deficit disorder, attention deficit hyperactivity disorder, learning disability, schizophrenia, back/neck injury, depression and insomnia . . . . It is respectfully advocated that the claimant's situation has worsened since the prior Unfavorable decision [in July 2015] . . . . It is specifically advocated that claimant has regressed in his social functioning as well as concentration, persistence or pace such that he has marked restrictions in those domains.

Tr. 248-249. On page three of his brief, Plaintiff's attorney also indicated that Plaintiff had physical impairments, noting "relative to his physical restrictions, the claimant does have a back condition to which he is seeking treatment with a pain management specialist . . . [and] underwent physical therapy in connection with his back . . . ." Tr. 250.

At the hearing, the ALJ inquired of Plaintiff's attorney whether the record was complete, and Plaintiff's attorney affirmed that it was. Tr. 34. Thereafter, the ALJ heard testimony from Plaintiff, and from vocational expert Dan Zumalt. On August 9, 2018, the ALJ found that Plaintiff was not disabled. Tr. 26. On June 5, 2019, the Commissioner's Appeals Council denied Plaintiff's request for review. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review.

Now before the Court are the parties' respective motions for judgment on the pleadings. Plaintiff presents two principal arguments. First, Plaintiff argues that the ALJ violated the "treating physician rule" by not giving controlling weight to his treating

2

psychiatrist, Dr. W. Joseph Touchstone, M.D., and by not providing "good reasons" for his failure to do so. Second, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ: (i) failed to develop the record with respect to Plaintiff's back surgery in January 2017, and therefore relied on a stale opinion from 2016 regarding the functional limitations imposed by Plaintiff's back condition; and (ii) failed to develop the record as to whether Plaintiff was literate and able to communicate in English.

The Commissioner disputes Plaintiff's contentions and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

## LEGAL STANDARDS

Under the law, a person is disabled for the purposes of SSI benefits if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether an SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d

117, 120 (2d Cir. 2008); 20 C.F.R. § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner as to whether a claimant has a "disability" that would entitle him or her to SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). It is not the reviewing court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).

Provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Thus, "[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our

4

judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

## DISCUSSION

In this case, the ALJ found at step one of the five-step evaluation process that Plaintiff had not engaged in substantial gainful activity since March 1, 2016, the application date. Tr. 17. At step two, the ALJ determined that Plaintiff has severe mental and physical impairments: degenerative disc disorder, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), attention deficit disorder ("ADD"), antisocial personality disorder, schizoaffective disorder, anxiety disorder, posttraumatic stress disorder ("PTSD"), and a history of learning disability. Tr. 17.

At step three of the process, the ALJ determined that none of Plaintiff's impairments, mental or physical, considered either individually or in combination, meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 18–19. Then, before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 416.945. After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except:

> [Plaintiff] could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours a day; can perform tasks learned in 30 days or less involving simple work-related decisions requiring little to no judgment with only occasional work place changes; no interaction with the public; occasional interaction with co-workers or supervisors; no work in hazardous conditions; no work at production-rate pace; and unable to work

in close proximity to others (such as standing next to or not being involved in tasks being done by others).

Tr. 19.

At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 25. At step five, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff could perform. *See* 20 C.F.R. § 416.969. Relying on the vocational expert's testimony, the ALJ found that Plaintiff could perform the requirements of a "folding machine operator," and an "inserting machine operator." Tr. 26. Hence, the ALJ found Plaintiff *was not* disabled for the purposes of SSI. Tr. 26.

The Treating Physician Rule

For claims filed before March 27, 2017, 20 C.F.R. § 416.927 requires that the "treating physician rule" be applied when determining a claimant's disability status. § 416.927(c)(1) provides that, generally speaking, the medical opinion of a source who has examined the claimant is entitled to greater weight than a source who has not. Further, § 416.927(c)(2) states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

"[I]t is well settled that the ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent

medical opinion." *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008). Nevertheless, the Second Circuit has cautioned that "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Indeed, the regulations require that the treating source's medical opinion be controlling *only* if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. § 416.927(c)(2).

Where the treating source's medical opinion does not meet these criteria, the ALJ is required to give "good reasons" for the weight assigned to the opinion. *Id.* The ALJ must determine the weight of the opinion by analyzing the so-called "*Burgess* factors:" length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion by relevant evidence, consistency with the record as a whole, the source's level of specialization, and other relevant factors. *See Burgess,* 537 F.3d at 128–130.

An ALJ's failure to explicitly apply the *Burgess* factors when assigning weight to a treating physician's opinion is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (citing *Selian v. Astrue*, 708 F.3d 409, 419–20 (2d Cir. 2013)). Nevertheless, if "a searching review of the record" assures the reviewing court that the procedural error was harmless, and "that the substance of the treating physician rule was not traversed," then the reviewing court will affirm the ALJ's decision. *Estrella*, 925 F.3d at 96 (citing *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004)).

7

In the present case, Plaintiff argues that the ALJ improperly rejected the opinion of his treating psychiatrist, Dr. W. Joseph Touchstone, M.D., without explicitly considering the *Burgess* factors, and without providing good reasons. Plaintiff argues that Dr. Touchstone's opinion should have been given "great" – if not "controlling" – weight because the opinion was supported by the large volume of treatment records from Family Services of Chemung County ("FSCC"), and by the findings of consultative examiner Dr. Amanda Slowic, Psy.D. The Court disagrees with Plaintiff.

Plaintiff seems to have begun his mental health counseling at FSCC in 2012 or 2013. Tr. 320. While the record does not appear to contain all records from Plaintiff's mental health treatment with FSCC, it does contain treatment notes dating back to 2015, during which his primary contact appears to have been with licensed master social worker Angela Jennings for counseling, with whom he met almost weekly at times, and less frequently for medication management meetings with Dr. Albert Chen. *See, e.g,* Tr. 363–369. At some point in late 2017, Plaintiff began seeing Dr. Touchstone instead of Dr. Chen. *Compare* Tr. 503 and Tr. 505 (showing records signed by Dr. Chen in September 2017, and Dr. Touchstone in December 2017).

In her decision, the ALJ provided a thorough summary of Dr. Touchstone's opinion, as well as a clear explanation of her reasons for attributing "little weight," to Dr. Touchstone's opinion. The ALJ wrote:

> The undersigned has considered and gives little weight to the opinions by treating physician, Joseph Touchstone, M.D. In Dr. Touchstone's April 2018 opinion, he opined that claimant's mental impairments result in an inability to maintain attention for two hour segments; inability to sustain [an] ordinary routine without special supervision; inability to complete a normal workday and workweek; inability to deal with normal work stress;

8

> and the claimant be absent from work more than four days per month. Approximately one month later, in May 2018, Dr. Touchstone opined that the claimant is unable to sustain ordinary routine without special supervision; unable to work in coordination with or proximity to others without being unduly distracted; unable to accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them; unable to deal with normal work stress; and would be absent more than four days per month. Here, Dr. Touchstone's opinion is not supported by his/her own treatment notes. Though treatment notes at times include reports by the claimant of auditory hallucinations, they otherwise generally reveal the claimant to engage well in sessions, that has been [sic] using his skills learned in therapy to avoid altercations and make healthy choices, the claimant was able to gain custody of his youngest son. Moreover, while examinations at times noted anxious, flat and depressed mood, they also revealed the claimant to be oriented; with "good" attention span and concentration; concrete thought process; normal speech; and normal recent and remote memory. The claimant also reported instances of noncompliance with psychotropic medication. Further, the first opinion dated April 2018, indicated that the claimant was not precluded from social aspects of the workplace, yet one month later in May 2018, he opined that the claimant was unable to meet competitive standards regarding social interaction, without any evidence in the medical record which would evidence such an extreme increase in social abnormalities to warrant such an extreme opinion in such a short amount of time. Moreover, Dr. Touchstone's opinion is in the form of a check box type form with little or no narrative to support. Such forms are not as persuasive as an in-depth written analysis which discusses the basis behind the opinion. Additionally, Dr. Touchstone's opinion is inconsistent with the medical evidence of record which fails to document such significant abnormalities on mental status examination to support such an extreme opinion. Therefore, little weight is given to Dr. Touchstone's opinions.

Tr. 24.

Because the ALJ did not explicitly acknowledge the "treating physician rule" or explicitly utilize the *Burgess* factors to explain why Dr. Touchstone's opinions were not entitled to controlling weight, the Court finds that the ALJ committed procedural error. Therefore, the Court has conducted "a searching review of the record to assure [that Plaintiff] received the rule's procedural advantages." *Halloran*, 362 F.3d at 32. This

searching review has satisfied the Court that Dr. Touchstone's opinions were not well-supported by clinical findings, and were contradicted by substantial evidence in the record.

Dr. Touchstone's two opinions were rendered approximately one month apart, and reported on a standardized, single-page worksheet, entitled "Mental Residual Functional Capacity Questionnaire (abbreviated)," which consisted entirely of checkboxes with no written narrative by Dr. Touchstone. *See* Tr. 449, 487. The Second Circuit has previously criticized such form reports as "only marginally useful." *Klodzinski v. Astrue*, 274 Fed. App'x 72, 73 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31 n. 2)). With respect to treatment notes, the record indicates Dr. Touchestone saw Plaintiff for four, thirty minute sessions: December 2017, January 2018, March 2018, and April 2018. Tr. 612–636. Dr. Touchstone's treatment notes, too, are primarily worksheets with checklists and standard entries. For all appointments, although the notes indicate that Plaintiff exhibited flat affect and restlessness, such notes also indicate that Plaintiff had good grooming and hygiene, balanced gait, normal speech, normal memory, and mental status that is "well oriented in all spheres." (Tr. 631). The notes state that Plaintiff spends his days babysitting his two children while his girlfriend is at work (Tr. 607, 612), and the early notes also suggest a "good" attention span. Tr. 612. The notes contain few details regarding the severity of Plaintiff's medical condition, particularly with reference to the Commissioner's "paragraph B" criteria for mental limitations.[1]

---

[1] The "Paragraph B" criteria include: understand, remember and apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage oneself. *See, e.g.,* 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00E.

Furthermore, not only are Dr. Touchstone's opinions inconsistent with his treatment notes, they are also inconsistent with other medical opinions in the record. For instance, despite Plaintiff's claim that Dr. Touchstone's conclusions are consistent with those of consultative examiner Dr. Slowik, Dr. Touchstone and Dr. Slowik diverge considerably on the severity of Plaintiff's impairments. In that regard, Dr. Touchstone opined that Plaintiff was "seriously limited" in his ability to maintain attention, maintain attendance and complete a normal workday. Tr. 490. Dr. Touchstone also opined that Plaintiff was "unable to meet competitive standards" for sustaining an ordinary routine, working in coordination with others, accepting instruction and criticism from supervisors, getting along with co-workers, and dealing with normal stress. Tr. 490. However, Dr. Slowik found that Plaintiff was only mildly limited in understanding and following simple instructions; not limited in his ability to maintain attention and concentration; moderately limited in his ability to maintain a regular schedule; and moderately to markedly limited in his ability to adequately relate to others and appropriately deal with stress. Tr. 437–438. To be sure, both doctors detected severe mental impairments, but the evidence for these impairments was considered by the ALJ, and her RFC determination was supported by substantial evidence.

The Court therefore concludes that "the substance of the treating physician rule was not traversed," and that Plaintiff was not harmed by the ALJ's procedural error. *Halloran* 362 F.3d at 32.

11

Duty to Develop the Record

In light of the non-adversarial nature of Social Security proceedings, the ALJ has a "duty to investigate and develop the facts and develop the arguments both for and against the granting of [disability] benefits." *Rutkowski v. Astrue*, 368 Fed. App'x 226, 229 (2d Cir. 2010) (internal citations omitted). Nevertheless, "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation." *Allen v. Comm'r of Soc. Sec.*, 1:16-cv-0273 (MAT), 2017 WL 604421, at *5 (W.D.N.Y. Feb. 15, 2017) (quoting *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)).

In addition to alleging a failure to observe the treating physician rule, Plaintiff argues that the ALJ's decision was not supported by substantial evidence because the ALJ failed to develop the record and properly consider the evidence with respect to (i) a back surgery Plaintiff apparently had in January 2017, and (ii) Plaintiff's ability to communicate in English. Pl. Mem. of Law at 22–28. The Court finds no merit in Plaintiff's arguments.

*Plaintiff's January 2017 Back Surgery*

At several points in the record, there are passing references to a surgery that was performed on Plaintiff's back in January of 2017. In a treatment note from Plaintiff's physical therapist dated March 6, 2017, she notes a "lumbar discectomy on 1/25/17" (Tr. 450); Plaintiff's primary care physician stated on August 8, 2017 that "he had a microdiscectomy January 2017" (Tr. 480); Plaintiff's counselor, Angela Jennings, wrote on February 16, 2017 that they "[d]iscussed his recent surgery and how he has been

healing since" (Tr. 525); and Plaintiff's psychiatrist, Dr. Albert Chen, stated on February 7, 2017 that "[h]e has recently undergone a hemilaminectomy for a disc herniation on the lower back . . ." (Tr. 598). However, there are no medical records in the transcript that relate any details of the surgery, or limitations it may have caused.

As an initial matter, the Court notes that there were no obvious gaps in the record. Plaintiff's attorney submitted a brief to the ALJ prior to the hearing pointing out what he believed to be Plaintiff's significant issues. Tr. 248. Of the five pages in that brief, four were devoted to Plaintiff's mental impairments, and the one page devoted to Plaintiff's physical impairments made no mention of back surgery. Tr. 250. Moreover, at the commencement of the hearing on June 5, 2018, Plaintiff's attorney not only stated, "I'll rest on my brief," but he affirmed that the record before the ALJ was complete. Tr. 34–35. Plaintiff's attorney then had an extended opportunity to question Plaintiff, and he never attempted to elicit any testimony as to the January 2017 back surgery. Tr. 35–47.

On the present record, the Court discerns no failure on the part of the ALJ to develop the record with respect to Plaintiff's back surgery. *Allen*, 2017 WL 604421 at \*5 (citing *Harrison v. Colving*, No. 2:14-CV-0719-TFM, 2014 WL 5148156, at \*5 (W.D. Pa. Oct. 14, 2014)). Furthermore, after a thorough review of the record, the Court finds that there is no evidence that consultative examiner Dr. Gilbert Jenouri, M.D.'s opinion from June 2016 that Plaintiff's back impairment causes only mild-to-moderate restrictions is a "stale opinion." Tr. 445. The Court is satisfied that substantial evidence supports the ALJ's RFC assessment concerning Plaintiff's physical capabilities.

*Plaintiff's Ability to Communicate in English*

Lastly, Plaintiff argues that the ALJ failed to develop the record as to Plaintiff's ability to communicate in English. Pl. Mem. of Law at 25. Plaintiff cites the Second Circuit's ruling in *Vega v. Harris*, 636 F.2d 900 (2d Cir. 1981) for the proposition that "the ALJ is required to determine whether a claimant is literate and able to communicate in English." Plaintiff points out that he failed to obtain his GED, had difficulty reading and writing, and states "there is significant doubt in this record as to whether or not the plaintiff has the language skills required to perform the jobs identified by the vocational expert and cited by the ALJ in the decision." Pl. Mem. of Law at 27.

As was the case with Plaintiff's January 2017 back surgery, the Court finds that here there was no obvious gap in the record, and that substantial evidence supported the ALJ's determination that work exists in significant numbers in the national economy that Plaintiff can perform. As Plaintiff notes, Dr. Chen did point out that Plaintiff failed his GED test, and was involved in a special education program during his high school years. However, Dr. Chen also noted that, except for difficulty spelling the word "constitution," Plaintiff was able to spell "very well." Tr. 353. Perhaps more to the point, Plaintiff testified that he completed the eleventh grade and there is no indication in the record that any part of his education was in another language; not once in Plaintiff's three years of counseling notes from counselor Angela Jennings does she indicate that there was any difficulty communicating with Plaintiff in English; Plaintiff's attorney did not mention a difficulty with English in his brief prior to the hearing; Plaintiff's attorney did not examine Plaintiff regarding his inability to communicate in English during the

14

hearing; and there is no indication in the transcript of the hearing that Plaintiff's ability to communicate in English was in any way impaired. Accordingly, the Court is satisfied that the ALJ did not fail in her duty to develop the record with respect to Plaintiff's ability to communicate in English, and that substantial evidence supports her finding that there were significant numbers of jobs in the national economy that Plaintiff could perform.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 10) is denied; and it is further

ORDERED that the Commissioner's motion (ECF No. 12) is granted; and it is further

ORDERED that the Clerk of Court issue a judgment for the Commissioner and close this action.


DATED:   September 28, 2020
         Rochester, New York


                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge

15